UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

**Hon. Hugh B. Scott**

v.                                                      09CR329A

**Decision & Order**

Thamud Eldridge, Kashika Speed,
Kevin Allen, and Galen Rose,

                          Defendants.

Before the Court are the following motions: the omnibus motion on behalf of Kashika

Speed ("Speed") (Docket No. 42); the omnibus motion on behalf of Thamud Eldridge

("Eldridge")(Docket No. 45); the omnibus motion on behalf of Galen Rose ("Rose") (Docket No.

46); the omnibus motion on behalf of Eldridge (Docket No. 47); and the omnibus motion on

behalf of Kevin Allen (Docket No. 48).

**CHARGES**

On September 24, 2009, the Grand Jury for the Western District of New York issued an

indictment as follows: defendants Eldridge, Speed and Allen are charged with racketeering

activity in violation of Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.

§1961(1) and §1961(5).  Among the racketeering acts alleged are: the conspiracy to distribute

controlled substances; attempted robbery; robbery and kidnapping; robbery; the murder and conspiracy to commit robbery of Thedrus Laster ("Laster"); and the murder and conspiracy to commit robbery of Sam Jones ("Jones"). [Count 1]. Defendants Eldridge, Speed and Allen are also charged with conspiracy to commit racketeering in violation of 18 U.S.C. §1962(d) [Count 2]; conspiracy to possess and distribute various controlled substances in violation of 21 U.S.C. §846 [Count 3]; possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. §924(c)(1) and (2) [Count 4]; aiding and abetting in a criminal enterprise by kidnapping "Victim B" in violation of 18 U.S.C. §1959(a)(1) and (2) [Count 5]; conspiracy to delay and affect commerce by robbery and extortion of assets in violation of 18 U.S.C. §§ 1951 and 2 [Count 6]; and using, carrying and brandishing a firearm in relation to crimes of violence in violation of 18 U.S.C. §924(c)(1)(A)(ii) and 2 [Count 7].

Defendant Rose is charged with the possession and distribution of marijuana in violation of 21 U.S.C. §841(a)(1) [Count 8]; and conspiracy to possess and distribute marijuana in violation of 21 U.S.C. §841(a)(1) [Count 9]. Defendants Eldridge and Speed are charged with the murder of Thedrus Laster in violation of 18 U.S.C. §1959(a)(1) and 2. [count 10]. Defendants Eldridge, Speed and Rose are charged with conspiracy to delay and affect commerce by the robbery and extortion of Laster in violation of 18 U.S.C. §§ 1951 and 2 [Count 11]; the use, possession and discharge of a firearm in violation of 18 U.S.C. §924(c)(1)(A)(iii) and that in the course of this violation the three defendants caused the death of Laster in violation of 18 U.S.C. §§ 924 (c)(1)(A)(iii), 924 (j)(1) and 2 [Count 12]. Defendants Eldridge and Allen are charged with the murder of Jones in violation of 18 U.S.C. §1959(a)(1) and 2 [Count 13].

Defendants Eldridge, Speed and Allen are charged with conspiracy to delay and affect

commerce by the robbery and extortion of Jones in violation of 18 U.S.C. §§ 1951 and 2 [Count

14]. Defendants Eldridge and Allen are charged with the use, possession and discharge of a

firearm in violation of 18 U.S.C. §924(c)(1)(A)(iii) and that in the course of this violation the

three defendants caused the death of Jones in violation of 18 U.S.C. §§ 924 (c)(1)(A)(iii), 924

(j)(1) and 2 [Count 15]. Finally, defendant Eldridge is charged with using, carrying and

discharging a firearm in relation to a drug trafficking crime in violation of 28 U.S.C. §§

924(c)(1)(A)(iii) and 2 [Count 16]; and illegal possession of a firearm in violation of 18 U.S.C.

§§922(g)(1), 924(a)(2) and 2 [count 17].


## Discussion

The defendants requested the bifurcation of pretrial motions in this case. (Docket No. 39).

The motion was granted. (Docket No. 40). The defendants have filed respective motions seeking

various types of non-dispositive relief. The defendants have each joined in each other motions.


## Discovery

The defendants identified several general categories of discovery sought in the respective

motions. (for example, see Docket No. 42 at pages 19-21).  The government has represented that

it has produced over 1500 pages of documents and items of  voluntary discovery in this case.

The Court will address the items of discovery noted as outstanding at the time of oral argument.

If there are additional specific discovery requests outstanding, the defendants are granted leave to

make further application for relief.

The defendants seek discovery relating to an automobile defendant Allen was purportedly

in that was somehow connected to the Jones murder. The government has represented that it will produce the information as soon as the government obtains it. The government should make every effort to produce this material as soon as practical, and sufficiently prior to trial so that the defendants will have adequate opportunity to conduct a proper investigation of the evidence.

The defendants request laboratory reports regarding a gunshot residue test conducted on defendant Rose's hands. (Docket No. 46 at page 5, ¶ 1). The government represents that no such report exists inasmuch as a laboratory analysis has not been conducted, but that the defendants will be provided with a report of the lab results should an analysis be performed. (Docket No. 62 at page 7, ¶ 1). Similarly, the defendants seek lab reports regarding items 38A and 38B (a brown paper bag and a bottle of Hennessy Cognac) found in a car. (Docket No. 46, page 5, ¶ 2). The government represents that no lab reports exist as to item 38A, and that the defendants have already been provided with a copy of a report reflecting no DNA profiles exist as to item 38B. (Docket No. 62, page 7, ¶ 2). The defendants also seek lab reports regarding marijuana, as well as photographs taken of Rose and Speed. (Docket No. 46, page 5, ¶¶ 3-5). The government represents that these items will be produced. (Docket No. 62, page 8, ¶¶3-5). The defendants seek the identity of an individual who identified Speed in a photo array. This individual did not identify Rose in a photo array relating to the Laster homicide. (Docket No. 46, page 5 at ¶ 6). The government refuses to provide the name of the individual who identified Speed in the photo array. The government argues that the fact that the individual identified Speed does not exonerate Rose, who is alleged to have aided and abetted Eldridge and Speed in the murder of Laster. Thus, the government argues, because Rose is alleged to have aided and abetted Speed in the Laster murder, any thing that inculpates Speed, such as the identification of Speed by the witness, also

inculpates (rather than exculpates) Rose. (Docket No. 62 at pages 8-9). Similarly, the

defendants seek unredacted copies of previously produced reports relating to the police

investigations of the state crimes referred to in the indictment. (Docket No. 46 at page 5, ¶¶ 7-

10). Redacted copies of some of the documents were provided to the Court for review. (Bates

Nos. 780-781; 783-785). It appears that the only information redacted is the names of the

witnesses. The defendants have not identified a particularized need for disclosure of these

potential government witnesses prior to the disclosure of other Jencks Act material. The

government shall disclose this information along with other Jencks Act material as directed by

the District Court.[1]

The defendants also seek disclosure of a statement made by Allen to the Buffalo police on

April 6, 2005. (Docket No. 48 at ¶¶ 6). The government represents that the statement has been

provided to the defendants. (Docket No. 63 at page 14).


**Brady & Jenks Act Material**

The defendants seek the disclosure of all potentially exculpatory materials, including

information to be used for the impeachment of the government's witnesses, as required under

Brady v. Maryland, 373 U.S. 83 (1963) and its progeny. Brady material, as those cases have

come to define it, includes all evidence which may be favorable to the defendant and material to

the issue of guilt or punishment. Such evidence includes "[a]ny and all records and/or

---

[1]   Even if testimony of the witness who identified Speed is considered exculpatory to
Rose, for purposes of Brady v. Maryland, 373 U.S. 83 (1963), the defendant is not entitled to
immediate disclosure. As discussed below in connection with the defendants other Brady
requests, this material must be produced prior to trial so long as it is disclosed in sufficient time
for the defendants to have a fair opportunity to utilize the information at trial.

information which might be helpful or useful to the defense in impeaching ... [and] [a]ny and all records and information revealing prior misconduct ... attributed to the [government's] witness." U.S. v. Kiszewski, 877 F.2d 210 (2d Cir. 1989). The defendants also seeks disclosure of the statements of witnesses under the Jencks Act (15 U.S.C. §3500).

The government has acknowledged its obligations under Brady and Giglio v. United States, 405 U.S. 150 (1972), as well as the Jencks Act. The government has provided disclosure of what it represents is the only Brady material the government is aware of at this time. (Docket No. 57 at page 11-12).

Neither the Supreme Court, nor the Second Circuit[2], have ruled directly on whether there is a meaningful distinction between "exculpatory Brady" and "impeachment Brady" materials for purposes relating to the time within which such information must be disclosed. Several other courts have discussed the issue at hand, which often arises in the context of a potential, if not inherent conflict between the government's obligations to disclose under Brady, and the governments right to delay disclosure of certain information pursuant to the Jencks Act. Those cases suggest that the court has some discretion with respect to directing the timing of such disclosure. U.S. v. Campagnuolo, 592 F.2d 852 (5th Cir. 1979)(the Court interpreted Brady to require disclosure "at the appropriate" time, which often is prior to trial); U.S. v. Perez, 870 F.2d 1222 (7th Cir. 1989)(the government's delay in disclosing Brady material violates due process only if the delay prevented the defendant from receiving a fair trial); U.S. v. Ziperstein, 601 F.2d 281 (7th Cir. 1979)(a defendant receives a fair trial, notwithstanding delayed disclosure

---

[2]     In a footnote in its opinion in Lucas v. Regan, 503 F.2d 1, 3 n.1 (1974), the Second Circuit stated that "[n]either Brady nor any other case we know of requires that disclosures under Brady be made before trial."

of Brady material, as long as disclosure is made before it is too late for the defendant to make use of any benefits of the evidence). But see U.S. V. Wilson, 565 F.Supp 1416 (S.D.N.Y. 1983) (impeachment material need not be produced prior to trial); U.S. Biaggi, 675 F.Supp 790 (S.D.N.Y. 1987)(information bearing on a witness' credibility may be turned over at the same time as [Jencks Act] materials); U.S. V. Feldman, 731 F.Supp 1189 (S.D.N.Y. 1990)(it is sufficient for the government to disclose Brady impeachment materials along with [Jencks Act] materials).

The Jencks Act relates only to "statements" made by government witnesses.  Such statements may include inconsistencies which make them useful for impeachment purposes, and thus, subject them to disclosure under Brady principles.  To this extent, it has been suggested that the constitutional requirements underlying Brady could act to modify the Jencks Act. U.S. v. Campagnuolo, 592 F.2d 852, 860 (5th Cir. 1979). But see U.S. v. Presser, 844 F.2d 1275 (6th Cir. 1988)(the government may not be compelled to pretrial disclosure of Brady or Jencks material).  The record in this case does not reflect whether any of the materials withheld by the government may be considered both Brady and Jencks material.  Certainly "impeachment Brady" material may include several items which are not considered "statements" under the Jencks Act.

This Court believes that fundamental fairness and the constitutional due process requirements which underlie Brady mandate that the court have some discretion with respect to the timing of the disclosure of such information, even if it may be considered combined Brady/Jencks material. Indeed, even with respect to purely Jencks Act materials, the Second Circuit has stated that "pre-trial disclosure will redound to the benefit of all parties, counsel and the court, ... sound trial management would seem to dictate that Jencks Act material should be

submitted prior to trial ... so that those abhorrent lengthy pauses at trial to examine documents can be avoided." U.S. v. Percevault, 490 F.2d 126 (2d Cir. 1974); U.S. V. Green, 144 F.R.D. 631 (W.D.N.Y. 1992).

In the instant case, and while balancing all of the above, the Court concludes that disclosure of such inculpatory and impeachment material, if any exists, in accordance with the common practice in this district (prior to trial so long as it is disclosed in sufficient time for the defendants to have a fair opportunity to utilize the information at trial) is sufficient.

**Rule 807 Material**

Pursuant to Rule 807 of the Federal Rules of Evidence, the defendants have requested disclosure of statements subject to the residual exception of that rule which the government intends to use at trial. The government has represented that it is unaware of any evidence falling under Rule 807 in this case. (Docket No. 58 at page 10). If the government should determine that it will attempt to introduce such hearsay statements, the government is directed to notify the defendants.

**Identity of Informants and List of Winesses**

The defendants seek the pretrial disclosure of the identity of any informants in this case. The defendants also seek disclosure of a list of every person who the government interviewed as a prospective, possible or potential witness. (Docket No. 42 at page 32).

Generally, the government is not required to furnish the identities of informants unless it is essential to the defense. Roviaro v. United States, 353 U.S. 52, 60-61 (1957); United States v.

Saa, 859 F.2d 1067, 1073 (2d Cir.) cert. denied 489 U.S. 1089 (1988). Nor does Rule 16 require

the government to disclose the names of witnesses prior to trial. United States v. Bejasa, 904

F.2d 137, 139 (2d. Cir.) cert. denied 498 U.S. 921 (1990). In the instant case, defendant Speed

asserts that pretrial disclosure is necessary because the only incriminating evidence against him is

the testimony of cooperating witnesses. (Docket No. 42 at page 32).

The Court has the discretion to compel pretrial disclosure of the Government's witnesses,

at least where the defendant makes "a specific showing that disclosure [is] both material to the

preparation of his defense and reasonable in light of the circumstances surrounding his case."

United States v. Cannone, 528 F.2d 296, 300-301(2d. Cir. 1975). ("[D]istrict courts have

authority to compel pretrial disclosure of the identity of government witnesses."). Thus, the

burden is on the defendant to make "some particularized showing of need," United States v.

Kelly, 91 F.Supp.2d 580, 586 (S.D.N.Y.2000) (internal quotation marks and citation omitted),

which "should be balanced against the possible dangers accompanying disclosure (i.e.

subornation of perjury, witness intimidation, and injury to witnesses)," United States v. Cafaro,

480 F.Supp. 511, 520 (S.D.N.Y.1979) (quoting Cannone, 528 F.2d at 302).

In conducting this analysis, district courts in this Circuit have frequently looked to the

factors set forth in United States v. Turkish,458 F.Supp. 874, 881 (S.D.N.Y.1978):

> (1) Did the offense alleged in the indictment involve a crime of
> violence?
>
> (2) Have the defendants been arrested or convicted for crimes
> involving violence?
>
> (3) Will the evidence in the case largely consist of testimony
> relating to documents (which by their nature are not easily altered)?

9

(4) Is there a realistic possibility that supplying the witnesses' names prior to trial will increase the likelihood that the prosecution's witnesses will not appear at trial, or will be unwilling to testify at trial?

(5) Does the indictment allege offenses occurring over an extended period of time, making preparation of the defendants' defense complex and difficult?

(6) Do the defendants have limited funds with which to investigate and prepare their defense?

See United States v. Washington, 947 F.Supp. 87, 88 (S.D.N.Y.1996); United States v. Upton, 856 F.Supp. 727, 750-51 (E.D.N.Y.1994); United States v. Feldman, 731 F.Supp. 1189, 1199 (S.D.N.Y.1990).

In addition to the violent nature of the charges in this case, which include murder, the government has proffered information suggesting that: (1) defendant Eldridge has made statements indicating that witnesses will not testify against him in open Court; (2) a witness to the murder of Laster has advised the government that doors to residences associated with the witness were kicked in; and (3) that defendant Allen wrote a letter blaming defendant Speed and stating that he wished Speed was " 'D' for real." (Docket No. 63 at page 3-4). The factors set forth in Turkish weigh heavily against the pretrial disclosure of witnesses or informants in this case. Here, the defendants are charged with murder and other violent crimes; much of the evidence against them appears to be in the form of testimony (as opposed to documents); and there is a realistic possibility that supplying the names of witnesses prior to trial will increase the likelihood that the prosecutions's witnesses will not appear, or will be unwilling to testify, at trial. The defendants have not established a particularized need for pretrial disclosure of the

identities of any informants or the government's witnesses.   The government shall disclose the

names of witnesses and informants as directed by the District Court in its trial Order.


**Bill of Particulars**

The defendants seek a bill of particulars The circumstances warranting a bill of

particulars are limited. A defendant may obtain a bill of particulars only if the requested

information is necessary "(i) to enable him to prepare his defense; (ii) to avoid unfair surprise at

trial; and (iii) to preclude a second prosecution for the same offense." United States. v. Persico,

621 F.Supp. 842, 868 (S.D.N.Y.1985). "In deciding a motion for a bill of particulars, '[t]he

important question is whether the information sought is necessary, not whether it is helpful.' "

United States v. Conley, 2002 WL 252766, *4 (S.D.N.Y.2002). A bill of particulars "should not

function to disclose evidence, witnesses, and legal theories to be offered by the Government at

trial or as a general investigative tool for the defense." United States v. Henry, 861 F.Supp. 1190,

1197 (S.D.N.Y.1994). "Whether to grant a bill of particulars rests within the sound discretion of

the district court." United States v. Panza, 750 F.2d 1141, 1148 (2d Cir.1984).

"These principles must be applied with some care when the Government charges criminal

offenses under statutes as broad as RICO. With the wide latitude accorded the prosecution to

frame a charge that a defendant has 'conspired' to promote the affairs of an 'enterprise' through a

'pattern of racketeering activity' comes an obligation to particularize the nature of the charge to a

degree that might not be necessary in the prosecution of crimes of more limited scope." United

States v. Davidoff, 845 F.2d 1151, 1154 (2d Cir.1988).

In Davidoff, the Court held that the pretrial disclosure of the identity of the companies

from whom funds were extorted was necessary for the preparation of a defense.

Notwithstanding, Davidoff does not require that a bill of particulars be produced in all cases

involving RICO charges. Instead, the Second Circuit was careful to limit Davidoff's holding to

the facts presented: "We do not mean to imply that even in a RICO case the prosecution must

always disclose in advance of trial every act it will prove that may violate some criminal statute."

Davidoff, 845 F.2d. at 1154. Thus, in United States v. Torres, 901 F.2d 205 (2d. Cir. 1990), the

Second Circuit upheld the denial of a bill of particulars to RICO defendants seeking

particularization as to the identity of "other persons" as alleged in the indictment, as well as the

precise dates and locations that the defendants were to have participated in various overt acts.

The Second Circuit adopted the District Court's rationale that "[t]he indictment adequately

advises defendants of the specific acts of which they are accused. Moreover, the defendants have

been provided with a wealth of evidentiary detail from the discovery to date, including electronic

intercepts, search evidence and exhaustive supporting affidavits." Torres, 901 F.2d. at 234.

Subsequently, it has been held in RICO cases that the details regarding the date on which the

conspiracy was formed, or when each participant entered into the conspiracy need not be

revealed before trial. United States v. Persico, 621 F.Supp. 842, 868 (S.D.N.Y.1985); United

States v. Bronson, 2007 WL 2455138 (E.D.N.Y.,2007). In Bronson, it was also held that RICO

defendants charged with extreme acts of violence should not be granted early disclosure of the

government's theories as to the identities of unindicted co-conspirators. Bronson, 2007 WL

2455138 at *12. Further, in United States v. Minaya, 395 F.Supp.2d 28 (S.D.N.Y.,2005) the

Court held that the defendant charged with drug conspiracy and RICO was not entitled to

discover, through bill of particulars, names of all alleged co-conspirators and aiders and abettors.

In Minaya, the defendant was aware of identities of his named co-defendants, and the Court

found that there was potential danger to unnamed co-conspirators, given that case involved

allegations of violent crimes including murder. Minaya, 395 F.Supp.2d at 37. See also United

States v. Muyet, 945 F.Supp. 586 (S.D.N.Y.,1996)(RICO defendants are not entitled to a bill of

particulars setting forth the "whens," "wheres," and "with whoms" regarding the enterprise and

conspiracy); United States v. Urso, 369 F.Supp.2d 254, 273 (E.D.N.Y.,2005)(RICO defendants

charged with extreme acts of violence should not be granted early disclosure of the government's

theories as to the identities of unindicted co-conspirators).

The Court notes that the indictment in this case is 37 pages long and provides significant

detail as to the acts underlying the charges in this case. The indictment describes the enterprise as

consisting of a criminal organization comprised of Eldridge, Speed, Allen and others, who have

engaged in the distribution of cocaine, cocaine base, marijuana and heroin, and have committed

acts of violence, including murder, robbery, extortion and assault in furtherance of the enterprise.

(Docket No. 1 at pages 2- 5). Count 1 of the indictment describes 7 specific racketeering acts in

support of the RICO charge, including: the distribution of cocaine, cocaine base, marijuana and

heroin; the theft of property; attempted robbery of an individual on March 24, 2004; robbery and

kidnapping of an individual on February 23, 2005; robbery on another individual between

January and April of 2005; conspiracy to commit robbery and murder of Laster on April 3, 2005;

and the conspiracy to commit robbery and murder of Jones on April 6, 2005. (Docket No. 1 at

pages 7 - 14). The remaining counts of the indictment assert charges of conspiracy to commit

racketeering activities, drug trafficking, robbery, murder and illegal possession and use of

firearms. (Docket No. 1 at pages 14-29). In addition, the government has produced over 1500

pages of discovery to the defendants.

In this instant case, the defendants have requested particularization of well over 100 items, tracking most of the paragraphs of the indictment. (Docket No. 42 at pages 6-19); (Docket No. 45 at pages 10-20). Several of the requests seek information relating to the identity of unnamed "others" purported to have participated in the alleged enterprise with the defendants (Docket No. 45 at ¶¶ 30- 33; 35-38, 41, 46, 60, 64, 78, 85, 95, 101, 116, 121, 131, 142).[3] In light of the violent nature of the crimes alleged in the indictment, as well as the evidence proffered by the government as to the danger to the government's witnesses (Docket No. 63 at page 3-4), the government need not provide this information to the defendants at this time.[4] Bronson, 2007 WL 2455138 at *12; Minaya, 395 F.Supp.2d at 37;  Urso, 369 F.Supp.2d at 273.  Several of the requests seek the precise date or location of the acts set forth in the indictment. (Docket No. 45 at ¶¶ 29, 44, 45, 48, 49, 52, 53, 54, 55, 59, 66, 70, 73, 82, 89, 91, 92, 93, 94, 99, 100, 103, 104, 107, 108, 109, 111, 115, 120, 126, 134, 145, 152).  Still others, seek to have the government disclose its legal theories in the case (Docket No. 45 at ¶¶ 42, 43, 50, 67, 71, 72, 76, 83, 84, 90, 97, 98, 105, 112, 113, 117, 118, 124, 128, 129, 130, 135, 137, 138, 139, 140, 141, 146, 148, 149, 150,

---

[3]  The particulars requested by defendant Eldridge (Docket No. 45) are almost identical to the requests set forth by defendant Speed (Docket No. 42).  Although defendant Allen only requested particularization of 5 items, those requests are similar to requests included in the Eldridge requests. (Docket No. 48). For the purposes of brevity, the Court will site the paragraphs of the Eldrigde motion.

[4]  The defendants also seek the identity of the upstairs tenant at 87 Girard in Buffalo, New York .  (Docket No. 45 at 63). The defendants have not articulated a basis to conclude that pretrial disclosure of this information is necessary for the preparation of a defense or to avoid double jeopardy. Further, the Court declines to direct the disclosure of this information for the same reasons the Court declines to Order the disclosure of the identities of the unnamed associates.

153, 155, 156).  For example, the defendants ask the government to state how the defendants

"acted with 'malice aforethought'" (Docket No. 45 at ¶ 149) or "premeditation" (Docket No. 45

at ¶ 150). Some requests seek information already included in the body of the indictment. For

example, with respect to Racketeering Act One, the defendants ask what type of drug they are

alleged to have conspired to possess with the intent to distribute.  (Docket 45 at ¶ 51) However,

the language included in that segment of the indictment states that Eldridge, Speed and Allen

"conspired together ... to possess with intent to distribute ... quantities of cocaine and cocaine

base ... quantities of heroin and marijuana ... ."  (Docket No. 1 at page 7).  The defendants also

seek the government's theory as to how the conduct of the defendants alleged in the indictment

affected interstate commerce. (Docket No. 45 at ¶¶ 47, 57, 61, 75, 81, 88, 96, 102, 123, 133,

144).  The interstate commerce affected by defendants' alleged activities goes either to the

Government's theory of its case, see United States v. Perez, 940 F. Supp. 540, 550 (S.D.N.Y.

1996), or seeks evidentiary detail to support that theory, see Torres, supra, 901 F.2d at 234. In

any event, particularization on the issue of interstate commerce is not required. United States  v.

Diecidue, 603 F.2d 535 (5th Cir. 1979).

With the exception of the items identified below, the information included in the

indictment, as well as the voluminous discovery already provided by the government is sufficient

so that the defendants can prepare a defense and avoid the possibility of double jeopardy.  The

defendants have identified certain categories of information which require particularization:

      1.     The government shall identify which subdivision(s) of the
                New York State Penal Law were violated by the respective
                defendants, when so alleged in the indictment. (Docket No.
                45 at ¶¶ 56, 62, 77, 79, 86).

2.      The government shall identify the "other activities," not
        otherwise identified in indictment, which the defendants are
        alleged to have carried out (directly or through others) in
        furtherance of the enterprises affairs as alleged in ¶ 4(b) of
        the Introduction of the indictment. (Docket No. 45 at ¶34).

3.      The government shall disclose the identities of "Victim A",
        "Victim B" and "Victim C" (Docket No. 45 at ¶¶ 58, 65,
        74, 114, 119, 125). **This disclosure shall be made for
        attorneys eyes only. Counsel shall not disclose the
        identities of the victims to the defendants. Counsel is
        admonished that any investigation regarding the victims
        shall be done in a manner which takes every precaution
        to ensure that the identities of the victims are not
        disclosed to the defendants or individuals known to be
        associated with the defendants.** [5]

4.      The government shall identify the property purportedly
        stolen by the respective defendants where so alleged in the
        indictment (Docket No. 45 at ¶¶68, 69, 80, 87, 122, 132,
        143). **This disclosure shall be made for attorneys eyes
        only. Counsel shall not disclose the identities of the
        victims or the nature of the stolen property to the
        defendants. Counsel is admonished that any
        investigation regarding the victims shall be done in a
        manner which takes every precaution to ensure that the
        identities of the victims are not disclosed to the
        defendants or individuals known to be associated with
        the defendants.**

5.      The government shall identify which gang to which the
        respective defendants represented and/or identified
        themselves to be members. (Docket No. 45 at ¶¶ 39-40).

6.      The government shall identify and describe the various
        firearms, if such information is known to the government,
        alleged to be possessed by the defendants where so alleged
        in the indictment. (Docket No. 45 at ¶¶110, 127, 136, 147,
        151).

---

[5]   To this extent, the Court grants the defendants motion for a protective order allowing
disclosure of sensitive information for attorneys eyes only. (Docket No. 48 at pages 3-4).

7.      The government shall identify whether defendant Eldridge
        is being charged as a principal, accomplice or both
        regarding the possession and discharge of a firearm in
        Count 16).

The government shall provide the defendants with a bill of particulars consistent with the

above within ten (10) days of the date of this Order.

## Rule 404 and 609 Material

The defendants request disclosure of all evidence of prior bad acts that the government

intends to use in its case-in-chief, pursuant to Federal Rule of Evidence 404(b). The defendants

also request disclosure pursuant to Federal Rule of Evidence 609 of all evidence of prior bad acts

that the government intends to use for impeachment purposes should they testify at trial.

Rule 404 requires that the defendant be given "reasonable notice in advance of trial, or

during trial if the court excuses pretrial notice on good cause shown, of the general nature of any

such evidence it intends to use at trial."  To the extent that the government intends to use

evidence of any such prior bad act in its case in chief, the government shall produce all Rule

404(b) evidence as directed by the District Court in the trial order.

With respect to the defendant's requests under Rule 609, the only notice requirement

imposed by either applies where a party intends to introduce evidence of a conviction that is

more than ten years old. Under such circumstances, Rule 609(b) mandates that "the proponent

[give] to the adverse party sufficient advance written notice of intent to use such evidence to

provide the adverse party with a fair opportunity to contest the use of such evidence."  To the

extent the government intends to use a conviction more than 10 years old, it must comply with

this requirement.

**Preservation of Notes**

The defendants seek the preservation of notes taken by law enforcement personnel

involved in this matter. The government represents that it will preserve this material (Docket No.

58 at page 18).

**Disclosure of Co-Conspirator Statements and a Hearing as to Admissibility**

The defendants have also requested production of all statements made by any co-

conspirator, to the extent that the statement was made in furtherance of the conspiracy and the

declarant will not be testifying for the government at trial. (Docket No. 43 at page 12).

Generally, it is well established that the statements of co-conspirators are not discoverable

under Rule 16(a).  In re United States, 834 F.2d 283, 286 (2d. Cir. 1987); United States v.

Percevault, 490 F.2d. 126 (2d Cir. 1974);  United States v. Green,  144 F.R.D. 631, 638

(W.D.N.Y.  1992).  The Jencks Act provides the exclusive procedure for discovering statements

that government witnesses have given to law enforcement agencies.  U.S. v. Covello, 410 F.2d

536, 543 (2d. Cir.) cert. denied 396 U.S. 879 (1969).  Some Courts have ordered disclosure of

statements made by a co-conspirator, based upon the rationale that statements made by a co-

conspirator in furtherance of the conspiracy may be treated as the defendant's own statements, if

the co-conspirator is not a prospective government witness. Turkish, 458 F.Supp. at 882.

This request is premature inasmuch as there is no indication that the government has

determined a witness list for trial in this case. Moreover, any hearing as to the admissibility of co-conspirator statements is more appropriately resolved by the District Court Judge presiding over the trial in this case.

## Audibility

The defendants seek an audibility hearing regarding tape recordings the government intends to use at trial. (Docket No. 45 at page 23). The defendants do not allege that any particular tape is inaudible. If after having an opportunity to listen to any such recordings to be used at trial, defense counsel believes an audibility hearing is warranted, counsel is directed to notify the Court so that such a hearing can be scheduled.

## Suppression of Statement by Rose

Defendant Rose asserts that on April 3, 2005, he was questioned by members of the Buffalo Police Homicide Unit and that he provided a statement at that time. (Docket No. 46 at page 6). Rose requests a hearing "to investigate the facts and circumstances surrounding the taking of that statement. (Docket No. 46 at page 6). The defendant has not articulated any basis for suppression of this statement. The request for a suppression hearing is denied at this time.

## Conclusion

The respective motions for pretrial discovery are granted in part and denied in part consistent with the above.

So Ordered.

/s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
September 20, 2010