UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

                                              **DECISION AND ORDER**
                                              09-CR-329A

v.

THAMUD ELDRIDGE,
KASHIKA SPEED,
KEVIN ALLEN, and
GALEN ROSE,

                              Defendants.

---

       This case was referred to Magistrate Judge Hugh B. Scott, pursuant to 28 U.S.C. § 636(b)(1). On March 17, 2011, defendants Thamud Eldridge and Kashika Speed filed motions (Dkt. Nos. 100, 101) to disqualify either the entire office of the United States Attorney for the Western District of New York or Assistant U.S. Attorney Joseph Tripi individually. On October 7, 2011, Magistrate Judge Scott issued a Decision and Order (Dkt. No. 123) denying the primary request to disqualify the entire U.S. Attorney's Office but granting the alternative request to disqualify AUSA Tripi.

       Pursuant to 28 U.S.C. § 636(b)(1) and Rule 59(a) of the Federal Rules of Criminal Procedure ("FRCP"), the Government filed objections to the Decision and Order on November 21, 2011 (Dkt. No. 125). The moving defendants filed responses to the Government's objections on December 22 and 28, 2011 (Dkt.

Nos. 131, 133). The Government filed reply papers on January 5, 2012 (Dkt. No. 134). The Court held oral argument on January 19, 2012.

Pursuant to 28 U.S.C. § 636(b)(1)(A), the district court "may reconsider any pretrial matter under this [section] where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." The Court has reviewed the Government's objections and Magistrate Judge Scott's Decision and Order. Upon such review, the Court finds that the portion of Magistrate Judge Scott's Decision and Order denying disqualification of the entire U.S. Attorney's Office is neither clearly erroneous nor contrary to law. For the reasons below, however, the Court vacates the Decision and Order in part with respect to the disqualification of AUSA Tripi, and denies that request for disqualification without prejudice to renew as a motion *in limine* at trial.

As a general principle, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Garcia v. Teitler*, 443 F.3d 202, 211 (2d Cir. 2006) (citation omitted). With respect to the issue of disqualifying prosecutors, "the Second Circuit has adopted a restrained approach to disqualification motions and has cautioned that where a threat of tainting the trial does not exist, the litigation should proceed, and the remedy for unethical conduct lies in the disciplinary machinery of the state and federal bar." *U.S. v. Cain*, No. 05-CR-360, 2007 WL 1202305, at *3 (W.D.N.Y. Apr. 23, 2007)

2

(Arcara, *C.J.*) (editorial marks omitted) (quoting *Bottaro v. Hatton Assocs.*, 680 F.2d 895, 896–97 (2d Cir. 1982); *see also U.S. v. Regan*, 103 F.3d 1072, 1083 (2d Cir. 1997) ("A defendant who wishes to call a prosecutor as a witness must demonstrate a compelling and legitimate reason to do so.") (citation omitted).

Defendants' rationale for disqualifying AUSA Tripi is as follows. Detective Mary Evans ("Evans") interviewed defendant Eldridge just hours after Officers Earl Perrin ("Perrin") and Mark White ("White") allegedly beat him on the night of December 7, 2005 in a separate incident (*see generally* Case No. 06-CR-311). Evans lied about Eldridge's appearance in her interview notes by denying any suggestion of physical harm. Evans and other officers are motivated to cover up the beating because they are biased against "cop shooters" like Eldridge; the bias manifested itself when the officers who interacted with Eldridge on December 7, 2005 changed their behavior after discovering Eldridge's identity. Evans thus lacks credibility about her investigation in this case. Defendants normally would call Perrin as a witness to expose Evans's bias, but the Government already has decided not to use him or the events of December 7, 2005 in its case in chief at trial. According to defendants, therefore, the only other way to attack Evans's credibility and to expose her bias in this case is to call AUSA Tripi as a witness. AUSA Tripi would repeat statements that Perrin made to him that would appear to confirm that Eldridge was beaten on December 7, 2005. (*See, e.g.*, Dkt. No. 123 at 5 (summarizing Perrin's statements).)

There is a slight chance that defendants' theory of bias would make its way to the jury at trial.  Without deciding the issue now, Federal Rule of Evidence 804(b)(3) possibly might permit AUSA Tripi to repeat Perrin's statements as admissions against Perrin's interest.  See Fed R. Evid 804(b)(3) ("The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness: . . . A statement that: (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.").[1] Additionally, the Government is wrong to make a categorical argument against extrinsic evidence that might demonstrate bias.  "In analyzing the issue, it will be helpful to distinguish among the various purposes for which prior misconduct may have evidentiary value.  First, the misconduct may be relevant to an issue in the

---

[1] Again without deciding the issue now, Perrin might qualify as "unavailable" for purposes of Rule 804(b)(3) because he testified, at a post-trial hearing in Case No. 06-CR-311, that he does not remember whether he made the statements in question.  See Fed. R. Evid. 804(a)(3) ("A declarant is considered to be unavailable as a witness if the declarant: . . . testifies to not remembering the subject matter.").

case, such as intent or identity.  When offered for that purpose, prior misconduct is governed by Fed. R. Evid. 404(b).  Second, the misconduct may be relevant to impeachment of a witness, including the defendant, because it tends to show the character of the witness for untruthfulness.  When offered for that purpose, prior misconduct is governed by Fed. R. Evid. 608(b), which precludes proof by extrinsic evidence and limits the inquiry to cross-examination of the witness.  Third, the misconduct may be relevant to impeachment of a witness on some ground other than the character of a witness for untruthfulness.  The most typical example is misconduct offered to show bias of the witness.  When offered for that purpose, misconduct is not limited by the strictures of Rule 608(b)." *U.S. v. Schwab*, 886 F.2d 509, 511 (2d Cir. 1989); *see also U.S. v. James*, 609 F.2d 36, 46 (2d Cir. 1979) ("Although the language of [FRE 608(b)] is unfortunately rather awkward, the Notes of the Advisory Committee show that it was intended to regulate only the use of specific instances of conduct to prove that the witness is a 'bad person' or is a generally untruthful person who should not be believed.  However, bias of a witness is not a collateral issue and extrinsic evidence is admissible to prove that a witness has a motive to testify falsely.") (internal quotation marks and citations omitted).

That said, defendants' stated need to call AUSA Tripi as a trial witness is tenuous enough that disqualification now ignores the Second Circuit's "restrained approach" and constitutes clear error.  The statements in question that AUSA

Tripi would repeat as a witness are the subject of ongoing proceedings before this Court in Case No. 06-CR-311.  "[I]f it turns out there was no assault and Perrin's statements simply reflect an alcohol-induced false claim of bravado made in a misplaced attempt to impress old friends, the credibility of other portions of Perrin's testimony would not be undermined.  Nor would there be any reason to question White's credibility." (Case No. 06-CR-311, Dkt. No. 146, at 16.)  A corollary of such a finding would be that Perrin—and thus AUSA Tripi—would have nothing to offer that might expose any bias by Evans or other officers. Additionally, defendants conceded at oral argument that discovery is not complete and that the need to call AUSA Tripi as a witness may change depending on the outcome of that discovery.  Finally, the parties acknowledged that the details of their trial strategies may change between now and any eventual trial, which has not even been scheduled yet.  Under these circumstances, the probability that AUSA Tripi would taint any eventual trial by becoming a witness, while not zero, is too low right now for the aggressive remedy of disqualification. In fairness to defendants' need for further discovery and case development, the Court will make the rejection of AUSA Tripi's disqualification without prejudice to renew as a motion *in limine*, should future events increase the need for AUSA Tripi's testimony.

**CONCLUSION**

For all of the foregoing reasons, the Court vacates Magistrate Judge Scott's Decision and Order (Dkt. No. 123) in part with respect to the disqualification of AUSA Tripi, and denies that request for disqualification without prejudice to renew as a motion *in limine* at trial.

This case is referred back to Magistrate Judge Scott for further proceedings.

SO ORDERED.

                                          *s/ Richard J. Arcara*
                                          HONORABLE RICHARD J. ARCARA
                                          UNITED STATES DISTRICT JUDGE

DATED: January 31 , 2012