UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────

UNITED STATES OF AMERICA,

v.                                      DECISION AND ORDER
                                            09-CR–329

KEVIN ALLEN, et al.,

                         Defendants.

─────────────────────────────────

## INTRODUCTION

Before the Court are defendant Kevin Allen ("Allen") and defendant

Thamud Eldridge's ("Eldridge") (collectively referred to as "defendants") motions

for inspection and disclosure of grand jury transcripts, modification of the

protective order, and an order striking surplusage from the Superseding

Indictment.  For the reasons set forth below, the Court finds the following: (1)

defendants were not prejudiced by perjured testimony before the grand jury and

their motion for further disclosure of the grand jury minutes is denied; (2)

defendants' motion for modification of the protective order is denied; and (3)

defendants' motion to strike surplusage from the Superseding Indictment is

granted.

## RELEVANT FACTS AND PRIOR PROCEEDINGS

Defendants Thamud Eldridge, Kashika Speed, Kevin Allen, and Galen

Rose are charged with various offenses including racketeering, racketeering

conspiracy, murder in aid of racketeering, conspiracy to distribute controlled

substances, possession of firearms in furtherance of drug trafficking crimes,

violent crime in aid of racketeering-kidnapping, Hobbs Act robbery/conspiracy,

use, carry and brandish of a firearm during and in relation to and in furtherance of

crimes of violence, use, carry and discharge of a firearm during and in relation to

crimes of violence causing death, and felon in possession of a firearm.  (Dkt. No.

164)

        In sum, it is alleged that defendants were members of a criminal

organization that engaged in the distribution of cocaine, cocaine base, marijuana

and heroin and also committed acts of violence in furtherance of their drug

trafficking enterprise, including murder, robbery and extortion.  (Dkt. No. 164)

The organization allegedly operated principally on the East Side of Buffalo, New

York.  *Id*.  The Government contends that defendants robbed, murdered and

attempted to rob and murder other individuals involved in drug distribution and

that they carried, brandished and discharged firearms in furtherance of these

activities.  *Id*.  The murder counts set forth in the Superseding Indictment involve

the deaths of Thedrus Laster and Sam Jones who were killed, in separate

incidents, in April 2005.  *Id*.

        Defendants filed extensive pre-trial motions and a number of hearings were

conducted before Magistrate Judge Hugh B. Scott.  Magistrate Judge Scott

issued a comprehensive Report and Recommendation and two Decision and

2

Orders with respect to defendants' pre-trial motions.  (Dkt. Nos. 216, 217 and 221)  Defendants filed objections, the Government filed responses, and the defendants were permitted to file replies.  Oral argument as to defendants' objections was held on September 6 and September 11, 2013.  On November 20, 2013 this Court issued a Decision and Order adopting the Magistrate's findings in their entirety.  (Dkt. No. 249)

On October 17, 2013, defendant Allen filed a motion requesting an order returning this matter to Magistrate Judge Scott for various forms of relief as well as additional discovery.  (Dkt. No. 244)  Defendant Eldridge joined in the motion. (Dkt. No. 246)  Specifically, defendants requested that the case be returned to the Magistrate Judge for the following: (1) a hearing addressing the existence of any report or memorandum memorializing the exculpatory statements allegedly made by defendant Allen to the Buffalo Police Department; (2) a hearing addressing the seizure and sale of the vehicle defendant Allen was allegedly driving on the night of one of the murders; (3) an *in camera* inspection, and disclosure, of grand jury minutes; (4) determination of additional discovery issues; (5) modification of the protective order; and (6) an order striking surplusage from the Superseding Indictment.

On January 23, 2014, this Court issued a Decision and Order with respect to defendants' motion for an order returning the case to the Magistrate Judge for

various forms of relief.[1]  (Dkt. No. 257)  Therein, the Court granted the portion of defendants' pre-trial motion requesting that the case be returned to Magistrate Judge Scott for a determination as to whether an evidentiary hearing was necessary with respect to the existence of exculpatory statements and/or facts surrounding the same, as well as seizure of the car.  This portion of defendants' motion remains pending before Magistrate Judge Scott.[2]

This Court further found that an *in camera* review of the testimony presented to the grand juries regarding the Jones murder was warranted to determine: (1) whether there was sufficient independent evidence to indict defendants absent the perjured testimony; and (2) whether defendants were unduly prejudiced by the perjured testimony.  The Court ordered the Government to produce all grand jury transcripts pertaining to the Jones murder and reserved decision, pending an *in camera* review, as to defendants' request for disclosure of the grand jury minutes in order to supplement a motion to dismiss.  The Court's findings with respect to the grand jury issues, as well as defendants' requests for modification of the protective order and to strike surplusage from the Superseding Indictment, are as follows.

---

[1]  This Court assumes the parties' familiarity with the Court's prior Decision and Order in this matter.

[2]  With respect to defendants' additional discovery requests, counsel for defendant Allen stated, during oral argument, that no discovery issues remain outstanding and that he withdrew this portion of the motion.  Thus, in this Court's prior Decision and Order, defendants' request for additional discovery was denied as moot.

*Grand Jury Testimony*

According to submissions by the Government and defense counsel, one of the witnesses who testified before the May 2008 grand jury regarding the murder of Sam Jones committed perjury.  Specifically, after this individual testified, the Government learned that the so-called witness was actually incarcerated at the time of the incident and could not have been a witness to the murder.  In order to remedy this, the Government superseded the indictment, presented the superseding indictment to a new grand jury impaneled in November 2010, and called a law enforcement officer to correct the perjured testimony.  A second cooperating witness had also testified, before the May 2008 grand jury, regarding the Sam Jones murder.  That witness's testimony, along with testimony of other witnesses, was presented to the November 2010 grand jury.

Defendants claim that there are outstanding issues as to how the second cooperating witness identified defendant Allen, and as to whether the perjured testimony affected the second witness's identification of defendant Allen. Defendants request the release of grand jury minutes to defense counsel in order to "supplement the argument in support of dismissal of those counts of the indictment" involving the Sam Jones murder.  The Government maintains that the perjured testimony was corrected, that no prejudice occurred, and that the perjured testimony was not the sole testimony relied upon by the Government in indicting defendants for the murder of Sam Jones.

5

The Court has conducted an *in camera* review of the minutes from both the May 2008 and November 2010 grand jury proceedings related to the April 6, 2005 murder of Sam Jones.  Without disturbing the secrecy afforded to grand jury proceedings, the Court finds that not only was the perjured testimony corrected through the testimony of a law enforcement officer, but also that sufficient independent evidence was presented to support the grand jury's findings with respect to the murder of Sam Jones.  Further, the Court finds that the second cooperating witness's identification of Kevin Allen was in no way affected by the perjured testimony, and that the previous perjured testimony did not prejudice defendants with respect to the return of the Superseding Indictment by the November 2010 grand jury.

The Court denies defendants' request for further disclosure of the grand jury minutes.  Rule 6 of the Federal Rules of Criminal Procedure permits disclosure of matters occurring before a grand jury "at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury."  *See* Fed R. Crim. P. 6(e)(3)(C)(ii).  A party seeking disclosure of grand jury minutes must make "a strong showing of particularized need."  *United States v. Sales Engineering, Inc.*, 463 U.S. 418, 425 (1983).  A defendant has the absolute right to the grand jury testimony of any witness the government calls at trial.  *See* 18 U.S.C. §3500; Fed. R. Crim. P. 26.2(f)(3).  Otherwise, a defendant is not entitled to disclosure of

grand jury transcripts unless there are "concrete allegations of government misconduct." *United States v. Leung*, 40 F.3d 577, 582 (2d. Cir. 1994).

Here, there are no allegations or evidence of Government misconduct. Upon learning of the perjured testimony, the Government superseded the indictment, made full disclosure of the prior perjury to a newly impaneled grand jury, and presented independent evidence in support of the murder allegations. Defendants have made no showing of particularized need for the minutes beyond their request to supplement a motion to dismiss. As stated above, the Court has reviewed all grand jury minutes related to the murder of Sam Jones and finds that defendants were not prejudiced by the perjured testimony. For these reasons, defendants are not entitled to disclosure of grand jury minutes beyond the normal pre-trial requirements of *Jencks* and Section 3500 of Title 18 of the United States Code.

### *Modification of the Protective Order*

Defendants have moved to modify the protective order issued by Magistrate Judge H. Kenneth Schroeder, Jr., as well as Magistrate Judge Scott's Order which prohibits disclosure of the identity of informants or witnesses. It appears that some names of cooperating witnesses were inadvertently disclosed by the Government. However, defense counsel was ordered to refrain from further disclosing this information. Defendants argue that the investigation in this case is already over eight years old and that, by the time the trial takes place, it

will be too late to undertake a meaningful investigation of the background of cooperating witnesses.  Specifically, defense counsel requests modification of the protective orders to allow them to reveal the names of known witnesses to defendants and any necessary third parties in order to investigate the witnesses' claims in relation to the murder of Sam Jones.[3]  The Government contends that defendants' requests should be denied, since the safety concerns that prompted Magistrate Judge Scott and Magistrate Judge Schroeder's orders remain an issue.

The Government has no general duty to disclose the identities of witnesses before trial under either the Constitution of the United States or Rule 16 of the Federal Rules of Criminal Procedure.  *United States v. Bejasa*, 904 F.2d 137, 139 (2d. Cir. 1990).  Instead, a district court has the discretion to order the Government to disclose a witness list where a defendant makes a sufficient showing of the need for the information.  *United States v. Cannone*, 528 F.2d 296, 298-300 (2d. Cir. 1975).  Defendants are required to make a specific showing of how disclosure is material to the preparation of the defense and otherwise reasonable in light of the surrounding circumstances, including the possibility of witness tampering or intimidation.  *Id*. at 301-302.

---

[3]  During oral argument, defense counsel requested that the Court hold this portion of the motion in abeyance so that he may submit additional information. Defendants were given until February 7, 2014 to make a further submission in support of their motion to modify the protective order.  However, no additional submissions were made.

In his prior order, Magistrate Judge Scott cited to the following factors often used by courts in determining whether pretrial disclosure of witness names is appropriate: (1) Did the offense alleged in the indictment involve a crime of violence?; (2) Have the defendants been arrested or convicted for crimes involving violence?; (3) Will the evidence in the case largely consist of testimony relating to documents (which by their nature are not easily altered)?; (4) Is there a realistic possibility that supplying the witnesses' names prior to trial will increase the likelihood that the prosecution's witnesses will not appear at trial, or will be unwilling to testify at trial?; (5) Does the indictment allege offenses occurring over an extended period of time, making preparation of the defendants' defense complex and difficult?; and (6) Do the defendants have limited funds with which to investigate and prepare their defense?" *United States v. Eldridge*, 2010 U.S. Dist. LEXIS 98259 (WDNY 2010); *accord United States v. Turkish*, 458 F. Supp. 874, 881 (SDNY 1978).

In denying the request for pretrial disclosure of the names of witnesses or informants, Magistrate Judge Scott cited the violent nature of the charges against defendants, which include murders, robbery, kidnapping, and multiple crimes involving the use of firearms.  The Magistrate Judge also noted that, according to information proffered by the Government, defendant Eldridge made statements indicating that witnesses would not testify against him in open court, a witness to one of the charged murders advised the Government that doors to residences

associated with some of the witnesses were kicked in, and defendant Eldridge
wrote a letter to defendant Speed stating that he wished Speed was " 'D' for real."
*See Eldridge*, 2010 U.S. Dist. LEXIS 98259   In concluding that the factors set
forth in *Turkish* weighed heavily in favor of denying the request for disclosure,
Magistrate Judge Scott found that the vast majority of the evidence would be in
the form of eye-witness testimony rather than based upon documents, and that
defendants had not established a particularized need for pretrial disclosure of the
identities of any informants or witnesses.

In their renewed request for disclosure, defendants make a conclusory
claim that the information is needed in order to conduct a "meaningful
investigation" of the witnesses' backgrounds.  This is not sufficient to demonstrate
a particularized need for the information sought.  *See Cannone*, 528 F.2d at 301-
02 (district court abused its discretion in ordering disclosure of witness identities
where defense "made only an abstract, conclusory claim that such disclosure was
necessary" and government showed reasons why disclosure should not be
ordered).  Furthermore, the reasons cited by Magistrate Judge Scott, including
the violent nature of the charges and the likelihood of witness intimidation, remain
valid and serious concerns.  All of the defendants named in the Superseding
Indictment are alleged to have gang affiliations, and have been indicted for violent
crimes which could result in very lengthy prison terms, including the possibility of
a life sentence.  Since defendants have made no specific showing of how pretrial

disclosure of the names of the witnesses or informants is material to the

preparation of their defense, and because the Court continues to have a

legitimate basis to question the safety of informants and witnesses should their

identities be disclosed, defendants' motion to modify the protective order is

denied.

### Surplusage in the Indictment

Defendant Allen moves to strike his nickname from the Superseding

Indictment on the grounds that it is surplusage and unduly prejudicial.

Throughout the Superseding Indictment, defendant is referred to as "Kevin Allen

a/k/a/ Killer Kev".  Defendant argues that "Killer Kev" is not necessary to his

identification, that its use is highly prejudicial because one of his charges involves

a murder, and that by allowing the nickname to remain in the Superseding

Indictment the Court would essentially be inviting the jury to consider it as

propensity evidence.  The Government argues that because some trial witnesses

will know defendant Allen as "Killer Kev", the nickname is relevant and should be

admissible as to his identification.

Pursuant to Rule 7(d) of the Federal Rules of Criminal Procedure, "[t]he

court may strike surplusage from the indictment."  Motions to strike surplusage

are granted "where the challenged allegations are not relevant to the crime

charged and are inflammatory and prejudicial."  *United States v. Mulder*, 273 F.3d

91, 99 (2d. Cir. 2001).  In *United States v. Farmer*, the Second Circuit found that

a defendant was entitled to a new trial, with respect to his convictions for

attempted murder and various firearm offenses, after the district court denied

defendant's objection to the use of his nickname, "Murder", in the indictment and

during the trial.  583 F.3d 131 (2d. Cir. 2009).  Specifically, the prosecutor "used

the nickname promptly, repeatedly, and in ways calculated to intensify the

prejudice."  *Id*.  The Second Circuit acknowledged the following with respect to

the use of nicknames:

> When a defendant charged with a crime of violence is identified
> before a jury by a nickname that bespeaks guilt, violence, or
> depravity, the potential for prejudice is obvious.  Before receiving
> such evidence over a defendant's objection, a trial court should
> consider seriously whether the probative value is substantially
> outweighed by any danger of unfair prejudice, Fed. R. Evid. 403, and
> whether introduction of the nickname is truly needed to identify the
> defendant, connect him with the crime, or prove some other matter of
> significance.  Even so, a potentially prejudicial nickname should not
> be used in a manner beyond the scope of its proper admission that
> invites prejudice.  Federal Rule of Evidence 404(a) provides...that
> '[e]vidence of a person's character or a trait of character is not
> admissible for the purpose of proving action in conformity therewith
> on a particular occasion.'  It is the ethical obligation of the
> prosecutor, and the legal obligation of the court, to ensure that this
> rule is observed.

*Id*. at 135.  For these reasons, the Second Circuit held that it was error for the

district court to permit the Government to elicit testimony regarding the

defendant's nickname of "Murder" since identity was not an issue at trial, the

nickname had no legitimate relationship to the crime charged, and the nickname

was suggestive of a criminal disposition and a propensity to commit heinous

crimes.  The Second Circuit also emphasized the fact that the district court imposed no restraint or limitation on the government's use of the nickname, and that the defendant was referred to as "Murder" through the trial, including nearly 30 times during the prosecutor's rebuttal.  Thus, there was nothing done to mitigate the prejudice such as limit the use of the nickname or provide a curative instruction.

The phrase "Killer Kev" appears approximately 26 times in the Superseding Indictment in reference to defendant Allen.  Indeed, every time that defendant Allen is referred to in the Indictment, he is identified as "Kevin Allen a/k/a Killer Kev".  The nickname is used by the Government throughout its descriptions of defendant Allen's alleged roles in the RICO enterprise, narcotics trafficking, robberies and kidnaping, possession of a firearm in furtherance of drug trafficking, possession and brandishing of a firearm in furtherance of violent crime, and murder.  The Government argues that the nickname is relevant as to defendant's identity and role in the gang.  The Court disagrees.  At this time, the fact that defendant's nickname is "Killer Kev" is not directly relevant to the crimes charged, other than to show propensity, and the Superseding Indictment itself is of no evidentiary value.  Indeed, the Court finds that presenting an indictment containing repeated references to defendant Allen as "Killer Kev" to the jury in the beginning of the case, before any evidence is introduced, is unduly prejudicial in light of the serious and violent nature of the charges.  Inclusion of the nickname "Killer Kev" in

the Superseding Indictment also risks a finding by the jury that defendant acted in conformity with his nickname with respect to the alleged murder and other violent crimes charged.  Because the nickname "Killer Kev" is not directly relevant to the crimes charged and is unduly inflammatory and prejudicial, defendant Allen's motion to strike his nickname from the Superseding Indictment is granted.

However, the Court does not find, at this juncture, that the Government is wholly precluded from introducing evidence of defendant Allen's nickname over the course of the trial.  The Government may be permitted to introduce this evidence if it is needed to identify the defendant, connect him with the crime, or prove some other matter of significance with respect to the crimes charged.  The Court will consider any such evidence in light of both its relevance, and whether its probative value is outweighed by its tendency to create undue prejudice.  Further, if the Court does permit evidence of defendant Allen's nickname to be introduced, it will likely be for a very narrow purpose and will require a limiting instruction to be delivered to the jury.

## CONCLUSION

For the foregoing reasons, defendants' motions for modification of the protective order and disclosure of grand jury minutes are denied.  Defendants' motion to strike surplusage from the Superseding Indictment is granted.

The matter will remain pending with Magistrate Judge Scott for a Report and Recommendation as to the remainder of defendants' motions.

SO ORDERED.

____*Richard J. Arcara*_____

HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:   April 29 , 2014